J-S26033-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TERRENCE R. BUTLER, | : | |
| | : | |
| Appellant | : | No.  2648 EDA 2015 |

Appeal from the Judgment of Sentence March 20, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division, at No(s): CP-51-CR-0001837-2013
CP-51-CR-0001838-2013
CP-51-CR-0001839-2013

BEFORE:   OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED APRIL 13, 2016**

Terrence R. Butler (Appellant) appeals from the judgment of sentence entered March 20, 2015, following his convictions for firearms not to be carried without a license, accidents involving death or personal injury, aggravated assault by vehicle, carrying firearms in public in Philadelphia, fleeing or attempting to elude an officer, and three counts of recklessly endangering another person (REAP).  Upon review, we affirm.

The trial court summarized the background underlying this matter as follows.

> At trial, Officer George Dilworth testified that on October 12, 2012, he witnessed a silver Nissan Altima run a red light at the intersection of 12th and Race Streets in Philadelphia, "without yielding or slowing down."  Officer Dilworth proceeded to pull the vehicle over.  [Appellant] was seated in the driver's seat, and had one male passenger in the car.  Officer Dilworth asked

*Retired Senior Judge assigned to the Superior Court.

[Appellant] for his driver's license, registration and insurance. Pursuant to standard protocol, he returned to his vehicle and ran [Appellant's] information through the NCIC and PCIC databases, and then requested expedited backup.

Once his backup arrived, Officer Dilworth approached the driver and asked him to step out of his vehicle. At that time [Appellant] put his car into drive and "violently accelerated his vehicle northbound on Marvine Street, then through a parking lot onto 12th Street. He then proceeded to drive the wrong way northbound on 12th at an erratic speed, dangerous speed." Officer Dilworth testified that he immediately ran back to his vehicle and pursued [Appellant], but that [Appellant] was driving so fast that the distance between them kept increasing until [Appellant's] vehicle was out of his sight.

As he arrived at the corner of 12th and Spring Garden Streets, Officer Dilworth saw [Appellant's] car had crashed head on into a car with a family inside, causing extensive damage to both vehicles, and injuring all three of the passengers in the car that was struck. Both the driver and passenger door of [Appellant's] car were open, with neither still present at the scene. After calling an ambulance for the three people injured, Officer Dilworth searched for [Appellant] in the area around the [crash], but was unable to find him that night.

[Appellant's] car was towed to the police impound lot, and a warrant was executed for the search of the vehicle. One of the items that was recovered from [Appellant's] vehicle was a loaded firearm in the glove box.

Trial Court Opinion (TCO), 9/29/2015, at 3-4 (citations omitted).

On December 19, 2014, following a jury trial, Appellant was convicted of the above-listed crimes. He was sentenced to an aggregate term of 9½ to 19 years of incarceration followed by two years of probation. Appellant filed post-sentence motions, which were denied. This appeal followed.

Appellant presents one issue for our consideration: "Did the lower court abuse its discretion in refusing to grant a mistrial when the jury heard evidence that clearly implied that … Appellant had a prior criminal history?" Appellant's Brief at 3 (unnecessary capitalization omitted).

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa. Super. 2014) (quoting *Commonwealth v. Fortenbaugh*, 69 A.3d 191, 193 (Pa. 2013)).

Appellant takes issue with the following testimony offered by Officer Dilworth:

> [The Commonwealth:] Officer, after you received these documents from [Appellant], you said that you went back to your car?
>
> [Officer Dilworth:] I did.
>
> [The Commonwealth:] Is that standard protocol, to go back to your car after receiving those documents; license, registration, insurance?
>
> [Officer Dilworth:] Yes it is.
>
> [The Commonwealth:] What is protocol for what you do when you go back to your car?

[Officer Dilworth:] I run both, all documents that are handed to me, I run the vehicle through NCIC and PCIC and I also run the operator through BMV and NCIC and PCIC.

[The Commonwealth:] NCIC and PCIC, can you just explain to the jury briefly what that is?

[Officer Dilworth:] It is a national crime data base. It is if anybody is wanted anywhere in the United States, their name is entered into the system for any kind of warrant, anything, it would come up through NCIC/PCIC.

[The Commonwealth:] What else, what other data bases did you --

[Officer Dilworth:] You run it through BMV, which is Bureau of Motor[] Vehicles; that will tell me if the car is registered, who it is registered to, make sure it matches the VIN, everything matches what is on the registration. It also tells me if the car is stolen and all information about the vehicle is in there and it will tell me if the insurance is canceled for any reason or anything like that.

[The Commonwealth:] Officer, when you went back on October 21, 2012 and you checked the insurance of the vehicle, did the insurance check out that night?

[Officer Dilworth:] Well, we actually cannot check. There is no way to check insurance.

[The Commonwealth:] Was the insurance ever canceled?

[Officer Dilworth:] No, there was no insurance cancellation.

[The Commonwealth:] Was the registration, was everything in order in terms of the registration?

[Officer Dilworth:] Everything was valid for the car.

[The Commonwealth:] For the car, did it come back as stolen?

[Officer Dilworth:] No, it did not.

[The Commonwealth:]  So there were no reports of it being stolen at any point?

[Officer Dilworth:]  No.

[The Commonwealth:]  How long did it take you approximately to run all this information through the data bases that you just mentioned?

[Officer Dilworth:]  Less than five minutes, to put the information in.

[The Commonwealth:]  At that time you were still by yourself on the scene?

[Officer Dilworth:]  I was.

[The Commonwealth:]  Where is [Appellant] and the other person that was in the car at the time?

[Officer Dilworth:]  They are still seated in the vehicle in front of me.

[The Commonwealth:]  Could you see them clearly through your vehicle?

[Officer Dilworth:]  I can see them.

[The Commonwealth:]  What happened after you ran the vehicle and all the information through the data base?

[Officer Dilworth:]  I went over the air and had my backup that was enroute, to ask them to expedite.

[The Commonwealth:]  Did that backup officer arrive?

[Officer Dilworth:]  He did.

[The Commonwealth:]  What was that backup officer's name?

[Officer Dilworth:]  That was Police Officer Eric Romanczuk.

[The Commonwealth:]  Approximately how long did it take him to arrive?

[Officer Dilworth:]  Maybe five minutes.

[The Commonwealth:]  What happened after Officer Romanczuk arrived on the scene?

[Officer Dilworth:]  I explained to him that we need to get the driver out of the car.

[The Commonwealth:]  Did you go back to the car at that time?

[Officer Dilworth:]  Yes.

[The Commonwealth:]  Did you go back to the driver's side of the car again?

[Officer Dilworth:]  I did.

[The Commonwealth:]  At that time where was Officer Romanczuk?

[Officer Dilworth:]  Romanczuk was on the passenger side watching the passenger.

[The Commonwealth:]  Do you remember the passenger's name?

[Officer Dilworth:]  I don't offhand remember the passenger's name.

[The Commonwealth:]  You mentioned that when you got to, you got back to the driver's side of the vehicle and you asked [Appellant] a question, what did you ask him?

[Officer Dilworth:]  I asked him if he had been in any trouble recently.

[The Commonwealth:]  And what happened as a result of that?

[Officer Dilworth:]  Then I had asked him to step out of the car.

[The Commonwealth:] Then what happened?

[Officer Dilworth:] Then he violently jammed the car into drive and violently accelerated away from us.

N.T., 12/17/2014, at 53-56.

Appellant argues that the jury heard Officer Dilworth testify that he (1) needed to obtain expedited backup after running the driver's information on the computer, (2) explained to the backup officer that they "need[ed] to get the driver out of the car," and (3) asked Appellant "if he had been in any trouble recently" and "to step out of the car," at which time Appellant "violently jammed the car into drive and violently accelerated away from" the officers. Appellant's Brief at 12. Appellant claims this testimony constituted suggestions of prior criminal conduct and were "as prejudicial to [Appellant] as saying that the police acted in this way because they had an open warrant."[1] *Id.* at 7, 13-14. Appellant further argues that "[t]he trial court did not instruct the jury that the testimony of Officer Dilworth in this regard should be viewed with caution or disregarded." *Id.* at 7. Thus, Appellant contends he was denied a fair trial and the trial court abused its discretion by refusing to grant a mistrial.

Upon review, we conclude that Appellant has waived his claim by failing to make timely a motion for a mistrial. *See* Pa.R.Crim.P. 605(B)

---

[1] Prior to trial, the trial court granted Appellant's motion *in limine* to exclude evidence that, at the time of the incident in question, Appellant had an open arrest warrant for rape. N.T., 12/17/2014, at 4-10.

- 7 -

(explaining that, in order to be timely, a motion for mistrial "shall be made when the [allegedly prejudicial] event is disclosed"). Instantly, Appellant's motion for mistrial was not made until a considerable length of time after the references were made and after the conclusion of the Commonwealth's direct examination of Officer Dilworth. Accordingly, we hold that the motion was untimely made and, thus, his claim is waived on appeal. **See Commonwealth v. Boring**, 684 A.2d 561, 568 (Pa. Super. 1996) (holding that a motion for a mistrial was untimely when it was made "a considerable length of time after the allegedly prejudicial reference was made, and after the prosecutor had concluded direct examination of the witness").

Even if Appellant had not waived his claim, we discern no abuse of discretion in the trial court's decision to deny Appellant's request for a mistrial, which it explained, in part, as follows:

> In the present case, Officer Dilworth's remarks did not deprive [Appellant] of a fair trial, but merely stated the facts of what occurred when he had pulled [Appellant] over. Any prejudice, if any, that was caused by these remarks was minimal. Furthermore, it was [Appellant's] actions in fleeing which would have provided the prejudice to [Appellant], if any. Officer Dilworth obeyed the ruling of the court not to mention the past criminal history of [Appellant], and merely testified as to what occurred during the traffic stop, and that he had requested expedited backup.[2]

---

[2] We note the following portion of the discussion that occurred in relation to Appellant's motion *in limine* made prior to trial:

[The Commonwealth]: So, this is why I want to make sure that I don't cause a mistrial. I plan on asking Officer Dilworth about what he did after he asked for license, registration. He went

TCO, 9/29/2015, at 5.

Based on the foregoing, Appellant is not entitled to relief.  Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.[3]

---

back to run an NCIC/PCIC check, what that does, and that does include saying, seeing if there are any open warrants or not, and stop there; as a result of that, what, if anything, did you do, if that is permitted, then I will instruct my officer --

THE COURT:  That is permitted; the NCIC does, what the PCIC does, what he did and then he came back, but he is not allowed to say there is an open warrant.

N.T., 12/17/2014, at 9-10.

[3] On March 10, 2016, Appellant filed a letter directing our attention to a decision by the United States Court of Appeals for the Third Circuit filed subsequent to the submission of the instant case and suggesting that it may have persuasive value for purposes of this disposition.  This letter does not comport with Pa.R.A.P. 2501(a) (prohibiting the submission of letters relating to the case after the case has been submitted "except upon application").  Treating Appellant's submission as if he had complied with Rule 2501(a), we have considered it and conclude that it does not affect our disposition.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 4/13/2016